FILED
12/19/2018 9:13 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L013685

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| JOSEPH PRESTI, | ) |
| Plaintiff, | ) ) ) |
| -vs- | ) Case No. 2018L013685 |
| CITY OF CHICAGO, a municipal Corporation, | ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff, JOSEPH PRESTI, through his attorney, complains against the Defendant, CITY OF CHICAGO, as follows:

1. At all times mentioned herein, Plaintiff JOSEPH PRESTI (hereinafter "PRESTI") was a resident of the County of Cook in the State of Illinois.

2. Plaintiff was hired by the CITY OF CHICAGO (hereinafter "CITY"), on November 9, 1995 and was transferred to the Chicago Department of Aviation Vehicle Services Division on November 1, 2004 as a motor Truck Driver at O'Hare International Airport.

3. At all times mentioned herein, PRESTI adequately performed his job duties and was fully able to perform his job.

4. However, PRESTI suffered a disability, that is he suffered from asthma and diabetes. On May 11, 2009, Plaintiff requested a reasonable accommodation from his employer. Specifically, Plaintiff requested a clean work environment, avoiding dust, molds, smoke, etc., and requested free access to a bathroom and the possibility of obtaining snacks if needed.

5. On September 23, 2009, Plaintiff's doctor informed the CITY that Plaintiff could

continue to drive all vehicles except those involving excessive smoke, dust, chemical exposure. According to his doctor, Plaintiff also required free access to bathrooms and the possibility of snacking when needed. Plaintiff's doctor also indicated to the CITY that it would be inadvisable to assign Plaintiff to remote locations where breaks or bathrooms are more difficult.

6. On December 21, 2009, Plaintiff was given a revised accommodation by the CITY under the Americans with Disabilities Act ("ADA") and its amendments. The accommodation was that PRESTI was only allowed to work certain assignments (Ramp, Magnet, ARC Construction, Paint Shop, Stand By, AMB, Employees Bus and Labors truck, excluding those labor assignments that included garbage detail); that Plaintiff be allowed restroom breaks as needed; and that PRESTI be permitted to take snack breaks as needed to control diabetes.

7. Thereafter, PRESTI notified the CITY, through his superiors, that his accommodation was not being followed and that his assignments were not permitted under his accommodation.

8. Moreover, in December 2010, PRESTI reported to the CITY'S Office of Compliance that his Foreman Supervisor, Hector Tellado, had been violating his accommodation in assigning work, and that he believed his supervisor intentionally gave him unfavorable assignments in retaliation for the accommodation agreement.

9. The CITY, through its agents and employees, continued to retaliate against Plaintiff and to assign jobs that were and are not permitted under the accommodation agreement.

10. On March 28, 2016, PRESTI filed against the CITY a charge of Handicap Discrimination and Retaliation in the Illinois Department of Human Rights, Charge No. 2011 CF 2894. On March 8, 2012, the IDHR dismissed PRESTI's charge. After a timely request for review was filed, on October 25, 2012, the IDHR requested that the Illinois Human Rights

FILED DATE: 12/19/2018 9:13 PM 2018L013685

i. On October 6, 2012, the work bathroom wall had derogatory remarks on it as to PRESTI and his mother, and it was reported by PRESTI to supervisor Locelso.

j. On October 23, 2012, PRESTI asked that Locelso treat him regarding assignments, as favorably ns he treated others, including Bob Castillo and Sal Alteca. Castillo heard that request and repeatedly cursed at PRESTI.

k. Alteca demanded that PRESTI not mention his name, and then punched PRESTI in the face. Castillo then grabbed PRESTI by the shirt and Alteca punched PRESTI again and placed PRESTI in a headlock and dragged him towards the hood of a truck. Another driver intervened and pulled Alteca off of PRESTI, Frank Ferris then was walking with his arm around Alteca and they both were laughing. PRESTI reported this to Locelso and later had a telephone conference with Assistant Commissioner Hayden who told Locelso to split up Alteca and Presti.

l. Thereafter, Castillo caused PRESTI to be charged with a criminal offense after he assaulted PRESTI. PRESTI was forced to retain an Attorney to defend himself as to the criminal charges. The criminal charges were dismissed in a manner fully favorable to PRESTI. PRESTI made no agreements to anything concerning the criminal charges, at no time did the PRESTI compromise the charges against him; at no time did PRESTI do any act of misconduct in order to prevent the criminal charges from going to trial; or seek or accept mercy; new criminal proceedings have not arisen; and it was not impracticable to cause the criminal charges to be tried.

m. On December 19, 2012, Foreman Rod Myles, while in his office, stood up and screamed and yelled at PRESTI in a threatening manner and ordered him out of his office. Despite this, on January 31, 2013, Dawna Harrison, Departmental VIW Liaison, Department of Aviation, City of Chicago, wrote to Mr. Presti that "based on the incident that occurred on December 19, 2012" the Department of Human Resources has determined that the incident does not involved conduct which is governed by the Violence in Workplace policy," no investigation will be conducted and this matter will be closed."

n. On February 19, 2013, CITY required PRESTI to undergo an "interview" by Kathryn Perry Hopkins, City of Chicago, EEO Investigator, Department of Human Resources; also present for the City was Jennifer M. Smith, Disability Officer. During that "interview," PRESTI answered every question and named persons that he believed were responsible for his treatment.

o. Within 2 days of the "interview," PRESTI wrote to and provided Hopkins with PRESTI's Request for Review filed with the Illinois Department of Human Rights, with 36 Exhibits. Despite providing all of that information and a list of about twenty (20) persons that had information, CITY did not interview any of those persons in the next three (3) months, but merely compiled a list "describing the scope of our investigation" and what they "intend to investigate." PRESTI had

FILED DATE: 12/19/2018 9:13 PM 2018L013685

provided additional information on March 12, March 25, March 26 and April 1 2, 2013.

p. After that "interview," in March 2013, there was new writing on the workplace bathroom wall ("Where's Joe Presti" and "I love snitches").

q. On March 21, 2013, Duane Hayden wrote that "we have removed the graffiti and posted a memo to all personnel that they are in direct violation of the City of Chicago personnel rule 18, section I." Though there were five (5) other derogatory writings and other oral communications over the work-place radio, neither Hayden, nor anyone else, wrote and distributed a similar memo on any of those other occasions.

r. April 10, 2013 - Duane Hayden tells Presti that the City will ignore seniority rights and prevent Presti from receiving the shift change he is entitled to, as seniority allows, because "Abel Leon and Mrs. Perry Hopkins" have not completed their investigation.

s. In April 2013, Presti was told to address Duane Hayden as "Mr. Hayden" or face charges of insubordination. No other employee has been given such an order.

t. On May 23, 2013, Duane Hayden incorrectly wrote to Presti that "Recently, you expressed that the Airside Laborer's Truck is a danger to your health as it could affect your respiratory condition," (Emphasis added). By email of January 29, 2013 to Robert May, Duane Hayden and Ramon Williams, Presti noted that he had discussed this with May on that date AND that this same assignment had been refused on 1/6/ 10 (and he was sent home without pay; though later he was paid for the day), and AGAIN on 3/16/10 and 3/24/1O; on both dates PRESTI refused the assignment. Since 3/24/10 he has not been given this assignment yet somehow this 3-year period has been categorized as a "recent" expression.

u. That same letter to PRESTI has "effective immediately" assigned him to the "Employee Bus." No "red stripe", of which PRESTI is one, has ever been given that assignment.

v. On September 9, 2013, there was again degrading writing on the bathroom wall concerning PRESTI.

w. On September 23, 2013, PRESTI was given an assignment, Air Side Laborer, that was not part of his accommodation, and which would affect his health. PRESTI refused that assignment and was sent home without pay.

x. Despite the many instances of derogatory information written in the bathroom, or remarks over the city net radio, or the false criminal charges placed against PRESTI, or the "victims" failure to appearing in court to prosecute those charges, PRESTI has been given no information that there has been any investigation to determine who is responsible for each act, nor has he been given any information

FILED DATE: 12/19/2018 9:13 PM 2018L013685

    that "warnings" that could stop such acts have occurred (with the exception of "q" above); nor has he been given any information as to when City of Chicago, EEO Investigation, Department of Human Resources, will make any findings, recommendations or interview the proper persons.

y. Twice in the week of, or before, October 18, 2013, a "red stripe" was needed for an airside VIP tour, on neither occasion did the Foreman give that assignment to PRESTI.

z. On October 18, 2013, PRESTI was ordered by Duane Hayden to write a letter concerning a matter by that evening; and had two (2) Aviation police witness this "direct order" and PRESTI requested Union representation. Hayden stated that the police were present in case PRESTI became combative. PRESTI has never been "combative" but for his assertion of his legally protected rights.

aa. While PRESTI's disability accommodations were under review and subject to pending grievances, the CITY continued to assign PRESTI to jobs which violated the accommodations being sought. On October 23, 2013, PRESTI was given a disciplinary notice for refusing an assignment on October 22, 2013.

bb. To this day, employees and agents of the CITY continue to harass PRESTI by constantly whistling at PRESTI in person and over the radio, despite being asked to stop, by threatening acts of violence against PRESTI, and by generally making PRESTI's working conditions objectively and subjectively unbearable.

17. Moreover, pursuant to the latest accommodation granted by the CITY, PRESTI was only required to work jobs (absent a declared airport emergency) which:

  1) do not involve breathing excessive smoke, chemical fumes, garbage smells, or mold. Mr. Presti may be exposed to airborne chemical salt, flying debris and dust;

  2) allow for Mr. Presti to take breaks as needed, within certain parameters;

  3) allow Mr. Presti to take snack breaks and medication breaks as needed to control diabetes;

  4) do not require pushing or pulling of more than 15 lbs.;

  5) do not require him to drive an un-air-conditioned vehicle in extreme heat.

18. PRESTI's supervisors were aware of these updated accommodations.

19. On October 12, 2016, the CITY pulled PRESTI off of a job and assigned him to another that violated his accommodation. In particular, PRESTI was ordered to tow a light

truck which was well over the pushing/pulling limitation of 15 lbs.

20. PRESTI reminded his supervisor that this job violated his accommodation, but the CITY ordered PRESTI to do the job anyway.

21. PRESTI was in fact physically injured by this job.

22. Supervisors and co-worker allegedly believe that PRESTI has no disability, that the law does not require an accommodation, and the CITY takes insufficient acts: (1) to inform the supervisors and co-workers of the law, (2) to prevent retaliation by those persons, and (3) to require the accommodation to be lived up to, and (4) takes the side of the co-workers and supervisors when it fails to or insufficiently disciplines those others and attempts to discipline PRESTI or ignores his complaints about his treatment.

23. Moreover, because the CITY did not properly investigate the acts towards PRESTI it has condoned these acts and sent a message to PRESTI's co-workers and supervisors that these acts towards the PRESTI were permissible, tolerated and encouraged.

24. As a result of the discriminatory acts stated above, PRESTI has experienced, and will continue to experience significant financial loss, including loss of wages and benefits, as well as severe emotional distress and great fear and uncertainty as to his career and the continued livelihood of both him and his family.

25. These acts are all in violation of the Illinois Human rights Act, the Americans with Disabilities Act, and the Constitution of the United States of America.

WHEREFORE, JOSEPH PRESTI demands judgment against the Defendant and prays that this Court order the Defendant CITY to:

    a. pay him compensatory and consequential damages in an amount to be determined at trial;

    b. pay him punitive damages in an amount to be determined at trial;

c. pay him nominal damages in an amount to be determined at trial;

d. cease and desist the discrimination, harassment and retaliation of PRESTI, and upon this cessation, comply with the reasonable accommodations agreed to by the CITY;

e. pay reasonable attorneys' fees and other costs of this action; and

f. award PRESTI such other relief as the court deems to be appropriate.

## COUNT TWO
## HOSTILE WORK ENVIRONMENT

26. As for Count II of this Complaint, PRESTI restates and realleges herein paragraphs 1 through 25.

27. The CITY's continuous, severe, and pervasive harassment and discrimination of PRESTI has created a hostile working environment from which PRESTI has substantially suffered. PRESTI'S work environment is both objectively and subjectively offensive.

28. This environment causes PRESTI extreme and repeated stress, and anxiety, each and every day he is at work, and/or dealing with supervisors and co-workers. Further, PRESTI has experienced significant financial loss, including loss of wages and benefits, as well as severe emotional distress and great fear and uncertainty as to his career and the continued livelihood of both him and his family.

29. These acts are all in violation of the Illinois Human rights Act, the Americans with Disabilities Act, and the Constitution of the United States of America. The hostile work environment arises out of PRESTI's disability or perceived disability.

WHEREFORE, JOSEPH PRESTI demands judgment against the Defendant and prays that this Court order the Defendant to:

a. pay him compensatory and consequential damages in an amount to be determined at trial;

b. pay him punitive damages in an amount to be determined at trial;

FILED DATE: 12/19/2018 9:13 PM 2018L013685

c. pay him nominal damages in an amount to be determined at trial;

d. cease and desist the discrimination, harassment and retaliation of PRESTI, and upon this cessation, comply with the reasonable accommodations agreed to by the CITY;

e. pay reasonable attorneys' fees and other costs of this action; and

f. award PRESTI such other relief as the court deems to be appropriate.

## COUNT THREE
## RETALIATION

30. As for Count III of this Complaint, PRESTI restates and realleges herein paragraphs 1 through 29.

31. PRESTI was retaliated against, and continues to be retaliated against, due to his refusal to allow the CITY to assign him in violation of his accommodation, because he filed three separate Charges of Discrimination with the IDHR, as well as Case No. 16 L 6121 in the Circuit Court of Cook County, and continues to protest the discriminatory treatment he has received and continues to receive, to demand that an investigation be made and that discipline imposed on co-workers that have discriminated and/or retaliated or made his work environment hostile. Each of PRESTI's charges, complaints, demands, and protests constitute protected activity.

32. The CITY has taken adverse job action against PRESTI, despite having been given notice of the discriminatory and retaliatory acts of its employees, including supervisory employees. Moreover, the CITY has not prevented additional retaliatory acts or taken proper steps to prevent retaliation. Instead, the CITY has attempted to discipline PRESTI. A causal nexus exists between the protected activity and the adverse acts.

33. Because of the CITY's retaliation against PRESTI, by and through agents and employees of the CITY, Plaintiff has experienced significant financial loss, including loss of

wages and benefits, as well as severe emotional distress and great fear and uncertainty as to his career and the continued livelihood of both him and his family.

34. These acts are all in violation of the Illinois Human Rights Act, the Americans with Disabilities Act, and the Constitution of the United States of America.

WHEREFORE, JOSEPH PRESTI demands judgment against the Defendant and prays that this Court order the Defendant to:

    a. pay him compensatory and consequential damages in an amount to be determined at trial;

    b. pay him punitive damages in an amount to be determined at trial;

    c. pay him nominal damages in an amount to be determined at trial;

    d. cease and desist the discrimination, harassment and retaliation of PRESTI, and upon this cessation, comply with the reasonable accommodations agreed to by the CITY;

    e. pay reasonable attorneys' fees and other costs of this action; and

    f. award PRESTI such other relief as the court deems to be appropriate.

Respectfully submitted,
JOSEPH PRESTI

/s/ Deidre Baumann
_____
By: His Attorney

Deidre Baumann, #30543
Baumann & Shuldiner
20 S. Clark Street, Suite 500
Chicago, IL 60603

(312) 558-3119